UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANNON M. BLICK,

      Plaintiff,

v.

ANN ARBOR PUBLIC SCHOOL
DISTRICT, ANN ARBOR BOARD
OF EDUCATION, SHONTA A.
LANGFORD, individually and in her
official capacity, DAWN LINDEN,
individually and in her official
capacity, DAVID A. COMSA,
individually and in his official capacity,
JEANICE KERR SMITH, individually
and in her official capacity, TANEIA
GILES, individually and in her official
capacity, and MIKE MADISON,
individually and in his official capacity,

      Defendants.

_____/

Case No. 19-12127

Stephanie Dawkins Davis
United States District Judge

Anthony P. Patti
United States Magistrate Judge

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS (ECF No. 16) AND DENYING
PLAINTIFF'S MOTIONS TO SUPPLEMENT (ECF No. 25, 29)**

## I.   INTRODUCTION

Plaintiff, Shannon Blick, is an elementary school principal who was placed

on administrative leave pending an investigation into alleged improper payments to

a school janitor.  She brings several constitutional claims against Defendants—Ann

Arbor Public School District ("AAPSD"), the Ann Arbor Board of Education

1

("AABOE"), Shonta A. Langford, Dawn Linden, David A. Comsa, Jeanice Kerr Smith, Taneia Giles, and Mike Madison.  (ECF No. 14).  Under 42 U.S.C. § 1983, she claims racial discrimination under the Fourteenth Amendment (Count I); violations of her rights to free speech (Count II), free petition (Count III), and free association (Count IV) under the First and Fourteenth Amendments; and violation of her due process rights under the Fourteenth Amendment (Count V).  She also claims racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, (Count VI) and under Michigan's Elliot Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq* ("ELCRA") (Count VII).  And she alleges a civil conspiracy in violation of her First, Thirteenth, and Fourteenth Amendment rights (Count VIII).

Blick filed an Amended Complaint on October 22, 2019.  Before the court is Defendants' Motion to Dismiss that complaint.  (ECF No. 16).  Blick filed a response (ECF No. 21), and Defendants filed a reply (ECF No. 22).  On April 22, 2020, the court issued a notice to the parties that a hearing on the instant motion was scheduled for June 9, 2020.  (ECF No. 24).  Two days before the hearing, at 10:54 p.m., Blick filed a motion seeking to supplement her response to the Motion to Dismiss.  (ECF No. 25).  In response, Defendants filed a motion to strike.  (ECF No. 26).  The court held the hearing on the Motion to Dismiss as scheduled on June 9, 2020 and took both the subject motion and Blick's Motion to Supplement

2

under advisement.  On September 9, 2020, Blick filed a Second Motion for

Supplementation of the Record, (ECF No. 29), and Defendants filed a response.

(ECF No. 30).  The court finds that no hearing is necessary for the Second Motion

and will decide it on the papers.  For the reasons set forth below, the court

**GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss

(ECF No. 16) and **DENIES** Blick's motions to supplement (ECF No. 25, 29).

## II.    FACTUAL BACKGROUND

Shannon Blick, a white woman, was hired as the Principal of Lawton

Elementary School, a part of the AAPSD, on September 16, 2013.  (ECF No. 14,

PageID.92).  Throughout her six years of employment with AAPSD and AABOE

leading up to this lawsuit, Blick maintained an exemplary employment record.  (*Id.*

at ¶ 26).  As Lawton's principal, she "was consistently rated Highly Effective," (*Id.*

at ¶ 34), and "had a spotless and pristine employment record with AAPSD,

including the complete absence of any warnings, disciplines, suspensions,

complaints, write-ups, grievances, charges or negative employment actions of any

type," (*Id.* at ¶ 35).  Nonetheless, she was placed involuntarily on paid

administrative leave in 2019, a move which she contends was racially motivated.

She was also prohibited from discussing matters relating to her leave with others.

Beginning in 2018, Blick's assistant principal was Defendant Taneia Giles.

Sometime during that year, Defendant Dawn Linden, the Executive Director of

Elementary Education for AAPSD, contacted Blick to inform her that her assistant principal, Dante Watson, an African American, was being promoted to Principal of Haisley Elementary and that Giles, who is also African American, would be taking Watson's place. (*Id.* at ¶ 36). Before her assignment at Lawton, Giles served as vice principal at King Elementary, which is also in the AAPSD. (*Id.* at ¶ 37). According to Blick, Linden stated that it was a priority of the AAPSD and AABOE to hire and retain more minority leaders. (*Id.* at ¶ 39). She asserts that this is only one of many examples of discrimination against non-minority administrators. For example, as to the hiring of Giles, she alleges that AAPSD and AABOE bypassed their standard procedure of conducting rounds of interviews involving parents, teachers, Lawton's principal, and the community before hiring Giles because Giles had reported racism at King, and they feared losing a minority administrator. (*Id.* at ¶ 40). She also alleges that Defendants subject Caucasians and non-minority administrators to hostility and harassment, accelerate the promotions of minority administrators at the expense of Caucasians and non-minorities, discipline Caucasians and non-minorities harsher, and refuse to educate, investigate, and take remedial action for "reverse discrimination." (*Id.* at ¶ 33).

As previously noted, even with her positive performance record, Blick was placed on paid administrative leave from her position as principal. It happened on April 26, 2019, when Blick met with Defendants Linden and Shonta Langford, the

Executive Director of Human Resources and Employee Relations for AAPSD.  (*Id.*

¶ 53).  At the meeting, she was placed involuntarily on paid administrative leave

due to an incident involving a Lawton custodian.  The custodian allegedly "stole

$25,000 over 4 years," and Blick, as principal during the period of the theft, was

possibly responsible.  (*Id.* at ¶ 54).  Langford gave Blick a letter which stated in

pertinent part:

> [Y]ou are being placed on an administrative paid leave of absence
> effective immediately, pending an investigation of allegations of
> potential fraud and misconduct.  In the meantime, you are directed not
> to contact any students, parents, or staff regarding this matter.
>
> Pursuant to MCL 750.552 you are also directed not to enter onto
> District buildings or property, with the exception of matters that
> involve your children (ie. (sic) Transporting to/from school and
> special events) (sic) You will be notified by Human Resources
> regarding a date for your due process hearing as part of the
> investigation.
>
> It is expected that you fill follow the directives outlined in this letter
> as failure to do so will be treated as insubordination and will lead to
> discipline up to and including termination.

(*Id.* at ¶ 53; ECF No. 16-2).  Afterward, fellow AAPSD principal Defendant Mike

Madison, who is President of the Ann Arbor Administrator's Association

("AAAA"), also told Blick that she was prohibited from contacting anyone at

AAPSD "for any reason" while she was on administrative leave.  (ECF No. 14, ¶

59).  The school district initiated an internal investigation surrounding the

allegedly stolen money which included what, if any role, Blick may have played in the matter.  (*Id.* at ¶ 47, 54).

Once Blick was on leave, Linden sent an email to the "Lawton Community"—including parents of Lawton students—advising that Blick would be on a leave of absence and stating that "she asks that you please respect her privacy."  (*Id.* at ¶ 62).  Blick denies having made any such request for privacy. (*Id.* at ¶ 63).  Several days after Linden sent the email to the Lawton Community, she and Langford met with Blick.  (*Id.* at ¶ 66).  Linden informed Blick that a group of Lawton parents intended to speak publicly on Blick's behalf at a bi-weekly AABOE Public Meeting scheduled for May 8, 2019.  (*Id.* at ¶ 69).  During the meeting, Linden warned Blick of the potential after-effects of a public airing of the parents' anticipated defense and asked Blick to contact one of the parents believed to be "leading the charge" to request that she not attend the meeting and that she speak with at least one other parent to convey a similar message.  (*Id.* at ¶ 71).  Linden also requested that Blick contact fourteen other parents of students to advise them that speaking on Blick's behalf would not be helpful.  (*Id.* at ¶ 71–73). Blick complied, and none of the parents spoke.  (*Id.* ¶ 75–76).

A little over a month later, on June 18, 2019 and July 24, 201[9] respectively, MLive/The Ann Arbor News ("MLive) submitted a Freedom of Information Act (FOIA) request to the AAPSD for records from Blick's personnel

6

file.  (*Id.* at ¶ 94).  The records produced pursuant to the FOIA request contained no information about facts leading to Blick's paid administrative leave.  (*Id.* at ¶ 95).  Following its June record requests from MLive, the School District denied a separate MLive FOIA request for records evidencing the existence of a criminal investigation on the grounds that doing so might interfere with an ongoing criminal investigation.  (*Id.* at ¶ 96).  But MLive reported separately that, as of June 20, 2019, the Ann Arbor Police Department denied having any record of a theft investigation at Lawton or law enforcement proceedings regarding Blick.  (*Id.* at ¶ 97).

Blick filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against "Ann Arbor Public Schools" on July 15, 2019.  (*Id.* at ¶ 110).  In her Charge, she asserted that she was "discriminated against, subjected to disciplinary action and placed on administrative leave" based on her race.  (ECF No. 14-1).  The EEOC issued Blick a Right to Sue Letter on July 24, 2019, which indicated that it was unable to conclude that the information obtained established violation of the statutes.  (ECF No. 14-2).

Also, on July 24th—and the same day MLive appealed the denial of its FOIA request about a criminal investigation—the School Board filed a police report with the Ann Arbor police relating to allegations of theft and/or fraud involving a janitor at Lawton.  *(*ECF No. 14, ¶ 99).  The police department

confirmed the existence of the report to MLive.  (*Id.* at ¶ 100).  According to Blick, the filing of the police report was a sham and evidence of Defendants' racial animus.  (*Id.* at ¶ 27).  The day after the police report was confirmed, Blick requested that the AABOE and AAPSD provide her with a name-clearing hearing. (*Id.* at ¶ 102).  Though she was initially told that a name-clearing hearing would be scheduled, (*Id.* at ¶ 104), none has occurred to date.

Based on these facts, Blick first alleges that she was discriminated against because she is Caucasian and that she was treated disparately from similarly situated African Americans and minority administrators.  (*Id.* at PageID.117–19, 130–33).  Second, she alleges that Defendants violated her free speech, free petition, and free association rights.  (*Id.* at 120–25).  She claims that Defendants actions violated these rights by restricting her from the following activities: "filing suit in a court of law; attend school board meeting and voice her opinions on matters of public concern on public property; be free from compulsion to speak a particular message; speak to anyone connected with AAPSD, and AABOE including parents, that they would like to; and file and pursue requests for information touching on matters of public concern from AAPSD and AABOE under Michigan's Freedom of Information Act, MCL 15.231 *et seq.* ("MFOIA"), without suffering intimidation, threats and acts of humiliation."  (*Id.* at ¶ 126, 137, 144).  Third, she alleges that Defendants violated her due process rights by not

providing her with a name-clearing hearing. (*Id.* at PageID.125–30). Fourth, she

alleges that Defendants engaged in a civil conspiracy to violate her constitutional

rights. (*Id.* at PageID.133–35). And fifth, she alleges *Monell* municipal liability

claims.

## III.   MOTION TO DISMISS

### A.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S.

41, 47 (1957)). A plaintiff is also obliged "to provide the grounds of his

entitlement to relief," which "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Ass'n of

Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007)

(quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks

omitted)).

In *Iqbal*, the Supreme Court explained that a civil complaint survives a

motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 677 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (explaining that the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief").

As a preliminary matter, the parties here have attached several exhibits to their respective briefs.  As a general rule, a court cannot consider matters outside the four corners of the complaint when ruling on a motion to dismiss under Rule 12(b)(6).  *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 781 (S.D. Ohio 2009).  Exceptions to this rule, however, do exist.  Pursuant to Rule 10(c), copies of written instruments attached as exhibits to a pleading are a part of that pleading for all purposes; therefore, the court may consider any documents that the plaintiff has attached to the complaint.  The court may also consider documents that a defendant attaches to a motion to dismiss if the documents are referred to in the complaint

and are central to the plaintiff's claims. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). And the court may consider public records and matters of which a court may take judicial notice. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999), *abrogated on other grounds*, *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).

### B.    Section 1983 Personal Capacity Claims, Title VII, and the ELCRA

Blick's § 1983 claims—Race Discrimination in Violation of the Equal Protection Clause (Count I), Freedom of Speech (Count II), Freedom to Petition (Count III), Freedom of Association (Count IV), Due Process (Count V)—are alleged against the Ann Arbor Public School District, the Ann Arbor Board of Education, and individually named Defendants in their official and personal capacities. She also alleges claims for racial discrimination under Title VII (Count VI) and the ELCRA (Count VII).

"Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing 42 U.S.C. § 1983). As a preliminary matter, it is important to note that a § 1983 *individual*-capacity claim differs from a § 1983 *official*-capacity claim. *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) (citing *Essex v. Cnty. of Livingston*, 518 F. App'x. 351, 354 (6th Cir. 2013)). An official-capacity claim

11

against a person is essentially a claim against the municipality. *Id.* Whereas, an individual-capacity claim seeks to hold an official personally liable for the wrong alleged. *See id.* "On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right[.]" *Leach v. Shelby Cnty. Sheriff,* 891 F.2d 1241, 1245 (6th Cir. 1989) (internal quotation marks omitted) (quoting *Kentucky v. Graham,* 473 U.S. 159, 166 (1985)). However, "[m]ore is required in an official-capacity action . . . . [T]he entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* As a result, the court will first address Blick's claims against Defendants in their individual capacities, then address her claims against the AAPSD, the AABOE ("Municipal Defendants"), and her official-capacity claims.

To bring a successful claim under 42 U.S.C. § 1983 against an official in his or her personal capacity, a plaintiff must establish "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights,* 265 F.3d 399, 405 (6th Cir. 2001). In brief, Defendants argue that Blick's allegations fail as a matter of law to show that the individually named Defendants deprived her of a federal right. As to her First Amendment claims, as more fully discussed *infra*, the court disagrees. However, as to her remaining claims, the court agrees with Defendants.

12

1.  <u>Race Discrimination under § 1983, Title VII, and the ELCRA</u>

Counts I (§ 1983), VI (Title VII),[1] and VII (ELCRA) allege that the named

Defendants subjected Blick to disparate treatment on the basis of race in their

individual capacities.  (ECF No. 14, PageID.117–19, 130–33).

Defendants argue that these counts should be dismissed because placing an

employee on paid leave during an investigation is not an adverse employment

action as a matter of law.  (ECF No. 16, PageID.166).  In response, Blick argues

that her Amended Complaint alleges that she was not only placed on paid

administrative leave but also subjected to multiple other adverse actions, including

deprivation of her First and Fourteenth Amendment rights and the filing of a false

police report.  (ECF No. 21, PageID.495).

The Equal Protection Clause prohibits public employers from discriminating

against their employees on the basis of race.  *Boger v. Wayne Cnty.*, 950 F.2d 316

(6th Cir. 1991).  Title VII prohibits employers from discriminating "against any

---

[1] Defendants argue that Count VI should be dismissed against the individual Defendants and the Ann Arbor Board of Education and its members because Blick failed to exhaust her administrative remedies.  (ECF No. 16, PageID.161–66).  An individual alleging employment discrimination in violation of Title VII must first file an administrative charge with the EEOC.  *See* 42 U.S.C. § 2000e-5(e)(1).  In particular, Defendants claim that Blick's EEOC charge "does not allege any specific acts of race discrimination" and failed to name the Ann Arbor Board and individual Defendants.  (ECF No. 16, PageID.161–66).  But given that the analysis for a Title VII claim is the same as the remaining § 1983 and ELCRA claims—and the court is dismissing those claims—the court will analyze the Title VII claim on the merits.  *See Hill v. Nicholson*, 383 F. App'x 503, 508 (6th Cir. 2010) (noting that "exhaustion is not a jurisdictional perquisite" in the Title VII context and that a court may decline to address exhaustion and dispose of the claims on the merits).

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1). Similarly, the ELCRA prohibits employers from discriminating "against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . race . . . ."  Mich. Comp. Laws § 37.2202(1)(a).

The court's analysis in determining the merit of Blick's disparate treatment claims under Title VII, § 1983, and the ELCRA is the same.  *Gardner v. Wayne Cnty.*, 520 F. Supp. 2d 858, 863 (E.D. Mich. 2007).  "The elements of a cause of action of reverse race discrimination under Elliot–Larsen and Title VII are also the elements required to establish a reverse race discrimination claim under Section 1983."  *Nelson v. City of Flint*, 136 F. Supp. 2d 703, 713 (E.D. Mich. 2001) (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988)); *see also Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) ("Because both Title VII and § 1983 prohibit discriminatory employment practices by public employers, this court looks to Title VII disparate treatment cases for assistance in analyzing race discrimination in the public employment context under § 1983.").

The plaintiff bears the burden of establishing the *prima facie* case of race discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "[A] plaintiff may establish discrimination either by introducing direct evidence of

14

discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006). "Furthermore, even when the plaintiff introduces some evidence of discriminatory animus, the plaintiff bears the burden of demonstrating that the employee suffered an adverse employment consequence that was in some part related to the employer's illegal discriminatory animus." *Gardner*, 520 F. Supp. 2d at 864 (citing *Graham v. Ford*, 604 N.W.2d 713, 717 (Mich. App. 1999)). By contrast, to present a *prima facie* case of race discrimination using indirect evidence under the *McDonnell Douglas* framework, Blick must show that (1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified for her position, and (4) she was replaced by a person outside the protected class or that a comparable person was treated differently. *See Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Under both approaches, therefore, plaintiffs must show they suffered some adverse employment action.

As a preliminary matter, it is important to note that "a plaintiff who assert[s] federal employment-discrimination claims [is] not required to plead facts

establishing a prima facie case to state a claim for relief." *Lindsay v. Yates*, 498

F.3d 434, 439 (6th Cir. 2007).  At the motion-to-dismiss stage, "it is not

appropriate to require a plaintiff to plead facts establishing a prima facie case

because the *McDonnell Douglas* framework does not apply in every employment

discrimination case." *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002).  "[T]he

precise requirements of a prima facie case can vary depending on the context and

before discovery has unearthed the relevant facts and evidence, it may be difficult

to define the appropriate formulation." *Keys v. Humana, Inc.*, 684 F.3d 605, 609

(6th Cir. 2012) (citing *Swierkiewicz*, 534 U.S. at 512).  "Significantly, the Supreme

Court identified the possibility that discovery may produce direct evidence of

discrimination, rendering the *McDonnell Douglas* burden-shifting framework

inapplicable to a plaintiff's claims." *Id.* (citing *Swierkiewicz*, 534 U.S. at 511–12).

Nevertheless, a plaintiff must still comply with the "plausibility" standard of

*Twombly* and *Iqbal*. *Id.* at 610; *see, e.g.*, *Young v. CSL Plasma, Inc.*, No. 15-cv-

10080, 2016 WL 1259103, at *2–5 (E.D. Mich. 2016) (dismissing the plaintiff's

claims for racial discrimination under 42 U.S.C. § 1981, Title VII, and the ELCRA

because plaintiff could not "establish that he suffered adverse employment actions,

or that the adverse employment actions were motivated by his race"), *affirmed by*,

No. 16-1570, 2017 WL 5157230 (6th Cir. May 26, 2017).

Although Blick is not required to establish a prima facie case at this stage, she must still allege sufficient factual content to make a claim for relief plausible. But she fails to plead sufficient facts to show she suffered an adverse employment action, which is required to state a claim for relief in an employment discrimination case. *See, e.g.*, *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) ("To establish an equal protection claim against a public employer under § 1983, the plaintiff must show that the employer made an *adverse employment decision* "with discriminatory intent and purpose." (internal quotation marks omitted) (emphasis added)).  An adverse employment action has been defined as "a materially adverse change in the terms and conditions of [a plaintiff's] employment."  *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (*en banc*), *aff'd*, 548 U.S. 53 (2006)).  A "bruised ego" or a "mere inconvenience or an alteration of job responsibilities" is not sufficient to constitute an adverse employment action.  *White*, 364 F.3d at 797.  Adverse employment actions are typically marked by a "significant change in employment status," including "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id.* at 798 (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)).

17

The court finds that Blick has not alleged that she suffered an adverse employment action.  First, as to the removal of her duties, Blick admits that she was placed on paid leave.  As Defendants correctly point out, (ECF No. 16, PageID.166), "a suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action." *White*, 364 F.3d at 803; *Jackson*, 194 F.3d at 752; *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004).  Moreover, Blick makes no allegation that she lost employment benefits during that time.

Second, Blick argues, as noted earlier, that Defendants subjected her to adverse employment actions by also publishing a letter allegedly containing "false and stigmatizing" information about her, infringing on her First Amendment rights to free speech and association with members of the Lawton community, and filing an "improper" police report.  (ECF No. 21, PageID.494–95).  The court finds that Blick's arguments pertaining to her constitutional rights, as well as those pertaining to the allegedly improper police report, are unpersuasive.  Blick cites no authority for the proposition that these actions constitute an adverse employment action.  Nor is the court aware of any.  Indeed, the caselaw that she does cite merely stands for the proposition that placement on administrative leave, *with loss of pay*, may constitute an adverse action in the context of a *retaliation* claim.  *See Dhalia v. Rodriquez*, 735 F.3d 1060, 1078–79 (9th Cir. 2013) (First Amendment

18

retaliation case); *Cepada v. Bd. of Educ.*, 974 F. Supp. 2d 772, 788–89 (N.D. Md. 2013) (Title VII and § 1981 retaliation case); *Meyer v. State*, 426 P.3d 89 (Or. Ct. App. 2016) (Title VII retaliation case) (citing *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007)).

Furthermore, her remaining allegations of various adverse actions do not relate to her conduct as an employee but rather as a citizen in the Ann Arbor public school system.  It is axiomatic, however, that an adverse employment action in the context of a discrimination claim must pertain to the terms or conditions of one's employment.  *See Spees*, 617 F.3d at 391.

Because Blick has failed to show that she suffered an adverse employment action, she has failed to state a plausible claim for disparate treatment on the basis of race under § 1983, Title VII, and the ELCRA.  Accordingly, Count I as to Defendants in their individual capacities and Counts VI and VII are **DISMISSED**.

### 2. Free Speech (Count II), Free Petition (Count III), and Free Association (Count IV)

Blick raises a series of First Amendment claims against Defendants in their personal capacities.  As to Blick's free speech claim, Defendants contend that it should be dismissed because Blick was restricted from speaking about her employment status, a matter of private concern.[2]  (ECF No. 16, PageID.174–77).

---

[2] Defendants also argue that Blick "fails to allege discrimination based on race with respect to any free speech right."  (ECF No. 16, PageID.174).  But the court agrees with Blick

Therefore, according to Defendants, any restrictions placed on her speech did not

violate the First Amendment as a matter of law.  (*Id.*)  The court disagrees.

 "A public employee has a constitutional right to comment on matters of

public concern without fear of reprisal from the government as employer."  *Taylor*

*v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003) (citing *Connick v. Myers*, 461 U.S. 138,

140, 145–46 (1983)); *see also Garcetti v. Ceballos*, 547 U.S. 410, 416 (2006).  But

"the state [also] has interests as an employer in regulating the speech of its

employees."  *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

In a typical First Amendment case involving a public employee, the

employee is seeking relief from adverse effects resulting from comments she has

already made.  *See, e.g.*, *Bennett v. Metro. Gov't of Nashville & Davidson Cnty.,*

*Tenn.*, 977 F.3d 530 (6th Cir. 2020) (finding no First Amendment violation after an

employee was terminated due to her posting racially-charged language on social

media); *Spring v. Cnty of Monroe, N.Y.*, 59 F. Supp. 559, 562 (W.D.N.Y. 2014)

("The typical First Amendment free-speech case by a public employee alleges

retaliation by the public employer for the employee's having spoken out about a

matter of public concern.").  But, like here, an employee may also bring a First

Amendment claim if she is prohibited or prevented from speaking on a matter of

---

that she is not required to allege racial discrimination as to her First Amendment claims nor does
she attempt to.  (ECF No. 21, PageID.504).  Thus, this argument is inapt.

20

public concern.  *See, e.g.*, *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir.

1999).  The Sixth Circuit has sometimes referred to these restrictions on speech as

"prior restraints."  *See, e.g.*, *Farhat v. Jopke*, 370 F.3d 580, 598 (6th Cir. 2004).

Regardless, the same two-step analysis applies.  First, the court must "decide

whether the speech at issue can be 'fairly characterized as constituting speech on a

matter of public concern.'"  *Jackson*, 194 F.3d at 746 (quoting *Connick*, 461 U.S.

at 146).  "If not, there is generally no First Amendment violation."  *Id.*  Second, if

the speech is a matter of public concern, then the court applies the *Pickering*

balancing test.  *Pickering*, 391 U.S. 563.  In other words, "the court must consider

whether the interest of the employee, as a citizen, in commenting on matters of

public concern outweighs the interest of the state, as an employer, in promoting the

efficiency of the public services it performs."  *Jackson*, 194 F.3d at 746 (citing

*Pickering*, 391 U.S. at 568).

Determining whether a matter is of public concern is based on the "content,

form, and context of a given statement, as revealed by the whole record."  *Connick*,

461 U.S. at 147–48.  A matter of public concern generally involves "any matter of

political, social, or other concern to the community."  *Leary v. Daeschner*, 349

F.3d 888, 899 (6th Cir. 2003).   Speech involves a public concern when it touches

on "issues about which information is needed or appropriate to enable the members

of society to make informed decisions about the operation of their government."

*Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 893 (6th Cir. 2003).

Furthermore, "the inquiry is primarily concerned with what the speaker intended to

communicate through his statement, and not his reasons for speaking." *Taylor*,

338 F.3d at 645.  On the other hand, "[f]ederal courts normally do not review

personnel decisions reacting to an employee's behavior 'when a public employee

speaks not as a citizen upon matters of public concern, but instead as an employee

upon matters only of personal interest.'" *Jackson*, 194 F.3d at 746 (quoting

*Connick*, 461 U.S. at 147). Nevertheless, "mixed questions of private and public

concern, where the employee is speaking both as a citizen as well as an employee,

can be protected." *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001).  "[I]f

any part of an employee's speech, which contributes to the disciplinary action,

relates to a matter of public concern, the court must conduct" *Pickering* balancing.

*Id.*  (quoting *Rahn v. Drake Ctr., Inc.*, 31 F.3d 407, 412 (6th Cir. 1994)).

Here, Blick's restricted speech concerns both private and public matters.

Langford's letter to Blick advised her that she was being placed on administrative

leave "pending an investigation of allegations of potential fraud and misconduct,"

and directed her "not to contact any students, parents, or staff regarding this

matter." (ECF No. 16-2).  The court notes at the outset that whether Blick's

restricted speech touches on a matter of public concern is a "close question."

*Jackson*, 194 F.3d at 747.[3]   Although parts of her speech necessarily involve "a personal grievance as an employee," which would be unprotected, the court nevertheless finds it plausible that "[her] speech also involves matters of public interest such that [Blick] is speaking as a concerned citizen." *Id.*  Viewing the facts in the light most favorable to Blick and according her all reasonable inferences from those facts, the court finds that Blick's restricted speech may concern public matters because of her status as a principal in the Ann Arbor community, the allegations of possible corruption against her, and her allegations of discrimination.

Although there appears to be a dearth of cases addressing similar circumstances to this case, *Jackson* is helpful here.  In that case, a police chief sued the city of Columbus, Ohio based on his suspension stemming from an investigation into his alleged misconduct.  The police chief claimed, among other things, that the city had violated his First Amendment rights by imposing a "gag order" that forbade him from speaking "with the news media about the investigation into his alleged misconduct while the investigation was pending." 194 F.3d at 746.  The district court had held, like Defendants argue here, that the

---

[3] The Sixth Circuit in *Jackson* stated that they did not need to decide the issue at the motion to dismiss stage because the question was whether the plaintiff had sufficiently alleged that he was restricted from speaking about matters of public concern. *Jackson*, 194 F.3d at 746. The court recognizes that *Iqbal* and *Twombly*—decided after *Jackson*—changed the pleading standard.  Regardless, under the new standard, the court still finds that Blick has alleged enough facts to make it plausible she was restricted from discussing matters of public concern.

chief's restricted speech did not touch upon a matter of public concern because the facts in the complaint showed "at most the existence of a personal employment dispute between plaintiff and the defendants, not the existence of a broader public controversy." *Jackson v. City of Columbus*, 67 F. Supp. 2d 839, 857 (S.D. Ohio 1998). But the Sixth Circuit reversed, first highlighting that the chief was "not an ordinary employee, but rather [] a high-profile member of the Columbus community." *Jackson*, 194 F.3d at 747. It also deemed noteworthy the fact that the investigation involved "allegations of corruption and abuse of power" as well as "allegedly racial motivations"; "[s]uch social and political issues are generally matter of public concern." *Id.*

Like in *Jackson*, Blick is also an official of some prominence in the Ann Arbor community. This is supported by Blick's allegation that she was asked to prevent fifteen parents of students, who wanted to speak out in support of Blick, from attending a bi-weekly AABOE public meeting. (ECF No. 14, PageID.104). Furthermore, word of the investigation generated news coverage by MLive, which sent FOIA requests to AAPSD for information regarding Blick's administrative leave and published stories about it. (ECF No. 14, PageID.109–10). In one article, MLive described Blick as "[a] popular Ann Arbor elementary school principal" and quoted Trustee Jeff Gaynor as stating, "It is clear that Ms. Blick was and is thought highly of by the Lawton community." (ECF No. 21-15, PageID.603–04).

24

Looking at the context of her restricted speech, therefore, her employment is a topic of importance to the children and parents in the community whose children attend Lawton.  *See, e.g.*, *Lewis v. Harrison Sch. Dist.*, 805 F.2d 310, 314 (8th Cir. 1986) (finding a principal's speech to the school board regarding the transfer of his wife, who was a teacher, to another school, to be a matter of public interest in part, "[b]ecause, school personnel assignments obviously are of considerable concern to those children, their parents, and others in the community," given that "the teachers and coaches in a public school district can deeply impact children's lives"); *Piver v. Pender Cnty. Bd. of Educ.*, 835 F.2d 1076, 1080 (4th Cir. 1987) (finding a teacher's support of tenure for his principal to be speech of public concern because it, in part, "centered on the adequacy of" the principal's performance at a high school, "which Topsail Beach parents were vitally interested").  Furthermore, like the police chief in *Jackson*, the content of her restricted speech may involve matters of public concern.  The investigation involving Blick pertains to alleged improper payments to a school janitor; the issue, therefore, involves misuse of public funds and potential corruption, which courts generally consider matters of public concern.  *See Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988) ("[S]peech disclosing public corruption is a matter of public interest and therefore deserves constitutional protection.").  Also, like *Jackson*, Blick alleges that she was investigated and placed on leave because of racial animus towards

25

non-minority staff, which would also be a matter of public concern. *Connick*, 461

U.S. at 148 n.8 (noting that racial discrimination is "a matter inherently of public

concern"). As a result, at this stage in the proceedings and viewing the fact in the

light most favorable to Blick, the court finds that she has sufficiently alleged that

she was restricted from speaking on a matter of public concern.

The two cases Defendants cite to support their position do not convince the

court to hold otherwise. First, Defendants cite *McDaniel v. Quick*, which,

according to Defendants, involved a letter similar to the one Langford sent to Blick

prohibiting her from speaking about her administrative leave. No. 4:07-cv-990-

TLW-TER, 2010 WL 2889026 (D.S.C. June 1, 2010). In *McDaniel*, the plaintiff

was demoted from his position as a principal to a teacher following an

investigation into allegations of sexual misconduct. *Id.* at *1–2. During the

plaintiff's suspension and investigation, he was prohibited from returning to any

schools in the district and directed "not to have any contact with any district or

school employees" pending the investigation. *Id.* at *6. If he was contacted by

any employees of the district, he was instructed "to advise them that you are not

able to discuss the matter." *Id.* The plaintiff claimed that this prohibition violated

his free speech rights, but the court held that the letter did not violate the First

Amendment because it did not prevent the plaintiff from speaking on a matter of

"public concern." Instead, according to the court, "[t]he letter from Quick to

26

Plaintiff prevent[ed] Plaintiff from speaking to other employees during and about the investigation," a "grievance[] concerning his own employment." *Id.*

As an initial matter, though decisions from district courts and courts outside this circuit may hold persuasive value in some instances, they are not binding on this court. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)); *Marku v. Ashcroft*, 380 F.3d 982, 988 (6th Cir. 2004) ("[C]ases from outside the circuit are not binding on us, but they do have some persuasive value."). Here, the court finds *McDaniel* unpersuasive. Unlike here, the plaintiff in *McDaniel* was, at least according to the letter at issue, prohibited from discussing the investigation only with employees of the district; it did not more broadly prohibit him from talking to community. That matters because the restriction was cabined to the employment environment; an employer may have a stronger interest in prohibiting speech to fellow employees due to the possibility of disrupting the workplace. *McDaniel's* persuasive value is also limited by its silence on some of the facts the court considers relevant here—such as a principal's status in the community and allegations of public corruption and discrimination.

Defendants also rely on *Haynes v. City of Circleville, Ohio*, 474 F.3d 357 (6th Cir. 2007).  The plaintiff in *Haynes* was a police officer and handler in the department's canine unit.  *Id.* at 359.  After sending a memo to his police chief objecting to rollbacks in canine handler training, the plaintiff was placed on administrative leave and eventually terminated.  *Id.* at 360–361.  The plaintiff brought a First Amendment retaliation claim.  As to whether the plaintiff's speech touched on a matter of public concern, the Sixth Circuit held that it did not.  According to the court, "[i]n lodging his protests to Chief Gray against the training cutbacks, Haynes was acting as a public employee carrying out his professional responsibilities," and, therefore, his speech was unprotected.  *Id.* at 364.  In doing so, the court highlighted that the memo was made pursuant to his "professional duties."  *Id.*  The plaintiff also directed his comments "solely to his supervisor," *id.*, and those comments addressed "nothing more than 'quintessential employee beef: management has acted incompetently.'"  *Id.* at 365 (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988)).

Unlike the comments in *Haynes*, Blick is restricted from speaking on matters outside of her professional responsibilities; she is prevented from discussing her own involuntary leave and investigation.  She is also, unlike in *Haynes*, prevented from discussing her with parents, students, and teachers—not just her superiors— and her own rather sudden involuntary leave of absence touches on matters beyond

28

mere incompetence, as outlined earlier.  As a result, the court finds that *Haynes* of
limited value here.

Because Blick's speech plausibly involved a matter of public concern, the
court would normally move on to *Pickering* balancing.  However, at this early
stage, neither party has provided any arguments regarding their interests in
speaking or prohibiting her speech nor has there been sufficient factual
development.  Thus, any analysis by this court under *Pickering* would be
premature.  *See, e.g.*, *Perry v. McGinnis*, 209 F.3d 597, 607 (6th Cir. 2000) ("In
many cases, due to inadequate factual development, the prong two balancing test
'cannot be performed on a 12(b)(6) motion.'") (quoting *Weisbuch v. Cnty. of Los
Angeles*, 119 F.3d 778, 783 (9th Cir. 1997)).

Finally, the court notes that Defendants have not, with any particularity,
addressed Blick's other individual free speech allegations—here prohibition from
attending school board meetings, entering on public property, speaking to anyone
connected with AAPSD and AABOE, and making FOIA requests.  Defendants
have also not addressed Blick's free petition and free association claims.  Some of
these claims may involve slightly different analyses from the "public concern"
analysis above.  *See, e.g.  Featherstone v. Columbus City Sch. Dist. Bd. of Educ.*,
92 F. App'x 279, 282 (6th Cir. 2004) (applying public forum analysis to the
plaintiff's claim that he was denied an opportunity to present his case to a school

board).  Some may overlap.  *See, e.g.*, *Boals v. Gray*, 775 F.2d 686 (6th Cir. 1985)

(applying *Connick*'s "public concern" test to the plaintiff's free speech and

association claims).  Because Defendants do not address these issues at this stage,

the court will refrain from addressing them as well.  *See Martin v. Charles*, No. 18-

11037, 2019 WL 4467212, at *3 (E.D. Mich. Sept. 18, 2019) ("[I]t is not the

Court's job to be the first to dive into that issue.") (quoting *McGrew v. Duncan*,

No. 18-2022, 2019 WL 4180465, at *2 (6th Cir. Sept. 4, 2019) ("A party may not

present a skeletal argument, leaving the court to put flesh on its bones.")).

    For these reasons, Defendants' Motion to Dismiss Blick's free speech claim

against them in their personal capacities is **DENIED**.

### 3. Procedural Due Process Claim (Count V)

    Blick claims constitutionally protected property interests both "in her job as

Principal of Lawton" and "in pursuing current and future employment and

maintaining her employment reputation and privacy."  (ECF No. 14, ¶¶ 152–53).

Based on those property interests, Blick alleges that Defendants violated her

procedural due process because she was "entitled to fundamentally fair procedures

to determine the basis of her suspension and whether a racial animus existed that

required certain protections be put in place to allow [her] to perform her job as

Principal of Lawton, and to protect her reputation and privacy."  (ECF No. 14, ¶

159).  In other words, Blick claims that she was entitled to due process before

being placed on administrative leave and to a name-clearing hearing.

As to Blick's claim that she was entitled to due process before being placed

on leave, Defendants argue that "AAPS administrators are appointed without

tenure; they have no property interest in their administrative positions."  (ECF No.

16, PageID.168).  They also note that although Blick has tenure as a teacher,

"being placed on paid administrative leave is not an adverse action."  (*Id.*)

In *Jackson v. City of Columbus*, the Sixth Circuit underscored that "the

suspension of [even] a tenured public employee *with pay* . . . avoid[s] due process

problems entirely."  *Jackson,* 194 F.3d at 749 (citing *Cleveland Bd. of Educ. v.

Loudermill,* 470 U.S. 532, 544–55 (1985)).  Because Blick admits she was placed

on administrative leave with pay, she was not entitled to any particular due

process—regardless of whether she had a property interest in her employment.[4]

Blick, however, suggests that she was "constructively terminated"

throughout her Amended Complaint.  (ECF No. 14, ¶¶ 27, 130, 157).  Although

---

[4] Blick claims she has a property interest in her position as principal under the Michigan Teacher Tenure Act, Mich. Comp. Laws § 38.71 *et seq*., (ECF No. 14, ¶ 151), which Defendants dispute. In a typical case, there is a two-step analysis: first, "establishing whether the teachers have a property interest in their positions," and second, "determining what process (if any) is due them." *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs.*, 641 F.3d 197, 216 (6th Cir. 2011).  "Property interests, of course, are not created by the Constitution."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Courts must look to "existing rules or understandings that stem from an independent source such as state law."  *Id.*  But the court need not address whether Blick has a property interest where, as here, there are no due process issues.

31

unclear, she suggests that Defendants constructively discharged her because she

suffered multiple adverse actions, not merely administrative leave:

> removal of all of her duties as Lawton's Principal in connection with a
> sham and illegitimate investigation; publication to the community of
> the May 1 Letter with false and stigmatizing representations regarding
> Plaintiff; prohibiting Plaintiff from expressing her 1st Amendment
> rights and associating with Lawton parents, students and staff; unduly
> restricting Plaintiff from attending her children's activities and
> functions at Lawton, including preventing her from attending
> Lawton's 5th grade graduation ceremony in early June 2019, a
> ceremony that multiple Lawton students, and their parents, requested
> that Plaintiff attend, and at which event her son was singing; directing
> Plaintiff to ask Lawton parents to refrain from associating and
> expressing their 1st Amendment rights at the May 8 Public Meeting;
> and submitting an improper report involving Plaintiff to the Ann
> Arbor PD.

(ECF No. 21, PageID.495).

"A constructive discharge may constitute a deprivation of property within

the meaning of the Fourteenth Amendment." *Medlin v. City of Algood, Tenn.*, 814

F. App'x 7, 14 (6th Cir. 2020) (quoting *Nunn v. Lynch*, 113 F. App'x 55, 59 (6th

Cir. 2004). "A constructive discharge exists if working conditions would have

been so difficult or unpleasant that a reasonable person in the employee's shoes

would have felt compelled to resign." *Id.* A plaintiff must show that: (1) "the

employer deliberately created intolerable working conditions, as perceived by a

reasonable person," and (2) "the employer did so 'with the intention of forcing the

employee to quit.'" *Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001)

(quoting *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999)).

And, of course, "the employee must actually quit." *Moore*, 171 F.3d at 1080.

Here, even if Defendants' actions would compel a reasonable person to resign, Blick has not actually quit her job. She remains on paid administrative leave. As a result, she cannot show constructive discharge. *See, e.g.*, *Smock v. Schlissel*, No. 18-10407, 2018 WL 9782576, at *4 (E.D. Mich. June 21, 2018) (finding no constructive discharge where the plaintiff returned to work).

As to Blick's claim of a property interest in her reputation and entitlement to a name-clearing hearing, it also fails. "The stigma-plus test is used to analyze a due process claim where the action taken by the state injures the plaintiff's reputation." *Doe v. Mich. Dep't. of State Police*, 490 F.3d 491, 501 (6th Cir. 2007). "Reputation alone, apart from some more tangible interests such as employment" is not a liberty or property interest under the Due Process Clause. *Paul v. Davis*, 424 U.S. 693, 701 (6th Cir. 1976). "A successful plaintiff must therefore show that the state's action both damaged his or her reputation (the stigma) and that it 'deprived him or her of a right previously held under state law' (the plus)." *Doe*, 490 F.3d at 501–02 (quoting *Paul*, 424 U.S. at 708).

In the employment context, "[a]n injury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination." *Ludwig v. Bd. of Trustees*

33

*of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972)).  "[W]hen a nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name," i.e., a name-clearing hearing.  *Id.*  Plaintiffs must satisfy five elements to show entitlement to a name-clearing hearing: (1) "the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment"; (2) "a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance"; (3) "the stigmatizing statements or charges must be made public"; (4) "the plaintiff must claim that the charges made against him were false"; (5) "the public dissemination must have been voluntary."  *Id.* at 410.

Blick argues that she is entitled to a name-clearing hearing due to Defendants' publication of the May 1st Letter and the June 20th Article in MLive, which contained "false and stigmatizing statements."  (ECF No. 21, PageID.498).  In particular, Blick argues that the Letter's statement, "she asks that you please respect her privacy," created a "false and stigmatizing impression."  (*Id.*; ECF No. 16-4).  Defendants, on the other hand, counter that "there has been no publication

of the reasons for the paid leave," and the letter never "explain[ed] that it was

investigating fraud and misconduct."  (ECF No. 16, PageID.167–168).

Even assuming for the sake of argument that the Letter made stigmatizing

statements, leave with pay, as noted, does not implicate the Due Process Clause.

Blick simply cannot show that the statements were made in conjunction with

termination from employment as required under element one because she was

placed on administrative leave with pay—not terminated.  Moreover, to the extent

that Blick argues that she was constructively terminated, it is not clear whether a

constructive discharge would entitle someone to a name-clearing hearing.  The

language in *Ludwig* limits a due process violation to "termination."  *See, e.g.*,

*Kremer v. Garland*, No. 2:09-cv-84, 2019 WL 4681802, at \*7 (S.D. Ohio Dec. 3,

2009) (highlighting that while constructive discharge may satisfy the stigma-plus

test in other circuits, Sixth Circuit law is clear that the stigmatizing statements

must be made in connection with a termination"); *Schirrick v. AU Sable Valley*

*Cmty. Auth.*, No. 04-10367, 2006 WL 373038, at \*7 (E.D. Mich. Feb. 16, 2006)

(holding that the plaintiff had not alleged "any stigmatizing statements related to

the discharge that implicate[d] her liberty interest" because, in part, "the defendant

did not actually terminate her; rather the claim is that she was constructively

discharged"); *cf. Dee v. Borough of Dunmore*, 549 F.3d 225, 234 n.11 (3d Cir.

2008) ("[T]he employee nonetheless satisfies the 'stigma-plus' test if he can

establish that he was "defamed in the course of being terminated *or constructively discharged*.") (emphasis added).  The court need not resolve the question in any event because, as noted, Blick fails to show that she was constructively discharged.

To the extent Blick suggests that she is entitled to a name-clearing hearing based on Defendants' representation that they would schedule one, this argument also fails.  (ECF No. 21, PageID.499).  "There is no constitutional violation when state actors fail to meet their own regulations, so long as the minimum constitutional requirements have been met."  *Black v. Parke*, 4 F.3d 442, 448 (6th Cir. 1993) (citing *Loudermill*, 470 U.S. at 541).  Regardless of whether Defendants promised to have a hearing, (*see* ECF No. 14, ¶ 104), Blick was not entitled to hearing under the Constitution, as discussed.  Accordingly, the court **DISMISSES** Count V.

## C.   *Monell* Claims Against Municipal Defendants and Defendants in Their Official Capacities

Blick alleges that Defendants had "policies and customs that maintained, promoted, perpetuated, tolerated, and allowed racial discrimination."  (ECF No. 14, ¶ 120).  She also alleges that Defendants' customs, policies, and practices violated her First Amendment and Due Process rights.  (*Id.* at ¶¶ 133–34, 141, 148, 175–77).

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or

custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).  In other words, "[a] municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'"  *Id.* (quoting *Monell*, 436 U.S. at 694).  There are four traditional ways of proving the existence of an illegal policy or custom: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations."  *Id.*  However, "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."  *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001).

Here, the court finds that Blick fails to state *Monell* claims for race discrimination and violation of due process.[5]  As discussed above, Blick has failed to state claims for race discrimination under the Equal Protection Clause and for a due process violation under the Fourteenth Amendment against Defendants in their individual capacities.  Therefore, because a municipality cannot be liable under § 1983 if no constitutional violation is established, her claims fail.  Consequently,

---

[5] As to the First Amendment, Defendants have failed to address whether Blick plausibly alleges a *Monell* claim for violation of her free speech, free petition, and free assembly rights; they address only whether she engaged in speech on a matter of public concern.  As a result, the court will not address the claim here.  Furthermore, unlike her race discrimination and due process claims, the court has found that Blick has alleged a plausible claim under the First Amendment.

37

Blick's *Monell* claims for race discrimination (Count I) and due process (Count V)

are **DISMISSED**.

### D.    Civil Conspiracy Claims (Count VIII)

Defendants argue that Blick's claim of civil conspiracy under § 1983 (Count

VIII) must be dismissed because her Amended Complaint "has wholly failed to

plead the who, what, when or where necessary to make out the claim against these

defendants." (ECF No. 16, PageID.172–74).  In response, Blick argues that she

has sufficiently set forth a claim for civil conspiracy to deprive her of her

constitutional and statutory rights.  (ECF No. 21, PageID.503–04).  The court

agrees with Defendants.

A civil conspiracy under § 1983 is "an agreement between two or more

persons to injure another by unlawful action."  *Revis v. Meldrum*, 489 F.3d 273,

290 (6th Cir. 2007).  To prevail on a civil conspiracy claim, Blick must show that

(1) a "single plan" existed, (2) the defendants "shared in the general conspiratorial

objective" to deprive her constitutional (or federal statutory) rights, and (3) "an

overt act was committed in furtherance of the conspiracy that caused injury" to her.

*Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks v.

Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).  "Although circumstantial evidence

may prove a conspiracy, it is well-settled that conspiracy claims must be pled with

some degree of specificity and that vague and conclusory allegations unsupported

38

by material facts will not be sufficient to state such a claim under § 1983."

*Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020) (quoting *Heyne v. Metro.*

*Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)).

First, Blick provides "no facts suggesting the existence of a 'single plan.'"

*City of Highland Park*, 2015 WL 3409013, at *5. Blick alleges facts that show that

the various Defendants were, of course, in contact with each other throughout her

investigation, and she also details some of the acts performed by individual

Defendants throughout her Complaint. However, she fails "to point to any specific

evidence of a common plan or objective." *Robertson v. Lucas*, 753 F.3d 606, 622

(6th Cir. 2014). In particular, she "simply alleges a series of distinct acts

committed by different defendants and attempts to lump those acts together in an

alleged conspiracy . . . ." *Udoku v. Cozzens*, 975 F. Supp. 750, 774 (E.D. Mich.

2013). Second, Blick fails to identify "which defendants conspired" and "how

they conspired." *Id.* She appears to allege that all of Defendants conspired. (ECF

No. 14, ¶ 201). But if she meant to allege that all Defendants conspired, then she

needed to specify how they conspired and what actions they took in furtherance of

that conspiracy. Simply incorporating all of the preceding paragraphs (*id.* at ¶ 199)

to state her civil conspiracy claim falls short of the required specificity. Third, as

discussed throughout this opinion, with the exception of her First Amendment claims, Blick has failed to allege any deprivation of her constitutional rights.[6]

For these reasons, Blick has failed to plausibly allege a civil conspiracy. Accordingly, Count VIII is **DISMISSED**.

### E.   Attorney's Fees and Costs

Defendants argue that they are entitled to attorney's fees and costs under 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k) because Blick "has brought vexatious and non-meritorious claims" against Defendants.  (ECF No. 16, PageID.177–78). The court disagrees.

The award of fees to a prevailing defendant is entrusted to the court's sound discretion, but "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct."  *Jones v. Cont'l. Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986) (citing *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978)).  As the Supreme Court explained in *Christiansburg*:

> *In applying these criteria, it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.  This kind of hindsight logic could discourage all but the most airtight claims,*

---

[6] The court also notes that Blick's civil conspiracy claim alleges a violation of the Thirteenth Amendment of the U.S. Constitution.  (ECF No. 14, ¶¶ 200, 203).  However, her amended complaint fails to provide any additional detail as to how Defendants violated the Thirteenth Amendment.

40

> *for seldom can a prospective plaintiff be sure of ultimate success.*  No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable.  Decisive facts may not emerge until discovery or trial.  The law may change or clarify in the midst of litigation.  Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.
>
> . . . Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.

434 U.S. at 421 (emphasis added).  In accordance with *Christiansburg,* the Sixth Circuit allows an award of attorney fees "to a prevailing defendant in civil rights action only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'"  *Baker v. Windsor Republic Doors,* 414 F. App'x. 764, 780 (6th Cir.2011) (quoting *Christiansburg*, 434 U.S. at 421).  Attorney's fees and costs are available to defendants in § 1983 cases under the same standards applicable to Title VII cases. *See Hughes v. Rowe*, 449 U.S. 5, 14–15 (1980).

Application of these standards requires inquiry into the plaintiff's basis for suing.  *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985).  Awards to prevailing defendants will depend on the factual circumstances of each case.  *Id.* "[W]here no evidence supports the plaintiff's position or the defects in the suit are of such magnitude that the plaintiff's ultimate failure is clearly apparent from the

41

beginning or at some significant point in the proceedings after which the plaintiff continues to litigate." *Id.*

Here, the court has retained Blick's First Amendment claims. As a result, her lawsuit is neither "frivolous, unreasonable, or without foundation." While the undersigned has found that Blick's allegation are insufficient to state a claim for racial discrimination, the defects are not of such a magnitude that her ultimate failure was clearly apparent. Thus, Defendants' request for attorney's fees and costs is **DENIED**.

## IV.  MOTIONS TO SUPPLEMENT (ECF No. 25, 29)

Two days before the hearing, Blick filed an 85-page motion seeking to supplement her response to the subject motion to dismiss under Rule 15(d). (ECF No. 25). Blick asserted new evidence from a partial FOIA request from the Ann Arbor Police Department. In response, Defendants filed a motion to strike. (ECF No. 26). On September 9, 2020, Blick filed a Second Motion for Supplementation of the Record, (ECF No. 29), and Defendants filed a response. (ECF No. 30). Blick presented evidence that a new principal was selected for Lawton Elementary School. For the reasons set forth below, the court **DENIES** Blick's motions to supplement.

Pursuant to Federal Rule of Civil Procedure 15(d),

*On motion and reasonable notice*, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction,

occurrence, or event that happened after the date of the pleading to be
supplemented.

*Id.* The function of a supplemental complaint is "to bring the action 'up to date.'"

*Weisbord v. Michigan State Univ.*, 495 F. Supp. 1347, 1351 (W.D. Mich. 1980).

Although the Federal Rules of Civil Procedure embrace liberal pleading standards,

leave to amend a pleading should be denied if it "would result in undue prejudice

to the opposing party, has been unduly delayed, has not been offered in good faith,

or would be futile." *Weisbord*, 495 F. Supp. at 1351 (citing *Foman v. Davis*, 371

U.S. 178, 182 (1962)).

As to the first motion to supplement, the court finds that it would not only

result in undue prejudice to Defendants but also would be futile. As to the former,

Blick filed her motion less than 48 hours before the hearing, at 10:54pm. And,

during the hearing itself, this court had to remind plaintiff's counsel on several

occasions not to reference the material contained in her motion to supplement, as it

was not currently before the court. Moreover, although Blick's motion is silent on

when she received the additional information with which she now seeks to

supplement the record, she states that she requested this information under the

Freedom of Information Act on March 27, 2020. (ECF No. 25, PageID.638). The

court recognizes that FOIA requests can take months to be granted. However, if it

was not received until a few days before the hearing, Blick could have asked for a

rescheduling of the hearing and explained the delay as the reason for the request.

43

She did not, and thus defendants were left with insufficient time to meaningfully respond.

Perhaps more important, the information with which Blick seeks to supplement the record would also be futile. Blick seeks to add information about the criminal investigation concerning the alleged unlawful payments to Willy Johnson. (*See generally* ECF No. 25). This information, while not entirely irrelevant, would not make any difference in today's ruling because it does not provide any evidence of racial discrimination. At most, the evidence buttresses Blick's claim that she was subject to a sham investigation. But, even assuming, for the sake of argument, that Blick was subjected to a sham investigation, this fact, standing alone, does not evidence racial discrimination on the part of Defendants, as Blick has not shown any evidence that such action was racially motivated. And the proposed supplement does not contain evidence of any such motivation. Indeed, all that the supplemental information would add are additional statements pertaining to the criminal investigation that Blick claims are false. But Blick has already alleged that the investigation is a sham and as discussed earlier, the existence of a sham investigation also does not establish adverse action.

As to the second motion to supplement, it is also futile. As noted, paid administrative leave is not an adverse action. Although a new principal may have been selected, Blick does not dispute that she is still placed on paid administrative

44

leave.  To the extent that she suggests she will be terminated as a result of the new appointment of a principal, the court cannot speculate on what actions Defendants will take.  Any analysis of whether Blick will suffer an adverse employment action would be premature at this point.  For these reasons, granting Blick's motion to supplement would be futile.  Accordingly, the court declines to grant her request to supplement the record.

## V.       CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss and **DENIES** Defendants' request for attorney's fees and costs (ECF No. 16).  Blick's motions to supplement are **DENIED** (ECF No. 25, 29).

Only Blick's claims alleging violation of her First Amendment right to free speech, petition, and assembly against the Municipal Defendants and the individual Defendants in their personal and official capacities remain.

**IT IS SO ORDERED.**

Dated: February 2, 2021                         /s/ Stephanie Dawkins Davis
                                                Stephanie Dawkins Davis
                                                United States District Judge